NO. 22-1908

In The

# United States Court of Appeals
### for the Fourth Circuit

## RUDOLPH CAREY III,

*Plaintiff–Appellant,*

*v.*

## NELSON SMITH, in his official capacity as Commissioner of the Virginia Department of Behavioral Health and Developmental Services,

*Defendant–Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

———————

## APPELLANT'S REPLY BRIEF

———————

Andrew Ward
Michael Greenberg
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320

January 23, 2023          *Counsel for Plaintiff–Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ...................................................................................... 1

JUSTICIABILITY ....................................................................................... 3

    I.     Rudy's claims are justiciable today because the Department bans
           him from working today. ........................................................ 3

    II.    The amended complaint would establish Rudy's standing
           because the pardon process is a dead end. ......................... 7

RULE 12(b)(6) ........................................................................................ 10

    I.     The district court should decide in the first instance whether
           Rudy's claims are plausible.................................................. 10

    II.    Rudy has stated a plausible claim that the barrier law is
           irrational................................................................................. 14

       A.  Motions to dismiss favor plaintiffs, who routinely win cases like
           this on the merits. ................................................................ 15

       B.  Rudy's allegations state a claim. ....................................... 22

       C.  The barrier law suffers the same deficiencies courts cite in
           invalidating similar bans. .................................................... 26

       D.  The similarly situated prong is satisfied. .......................... 33

CONCLUSION ........................................................................................ 36

CERTIFICATE OF COMPLIANCE..................................................... 38

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Alston v. Town of Brookline,*
   997 F.3d 23 (1st Cir. 2021) .................................................................4

*Baer v. City of Wauwatosa,*
   716 F.2d 1117 (7th Cir. 1983) ...........................................................21

*Barletta v. Rilling,*
   973 F. Supp. 2d 132 (D. Conn. 2013).................................... 17, 27-28

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................15

*Brewer v. Dep't of Motor Vehicles,*
   93 Cal. App. 3d 358 (1979)...............................................................18

*Butts v. Nichols,*
   381 F. Supp. 573 (S.D. Iowa 1974) .............................................17, 31

*California v. Brown,*
   479 U.S. 538 (1987)...........................................................................28

*Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.,*
   761 F.2d 970 (4th Cir. 1985)..............................................................11

*City of Cleburne v. Cleburne Living Ctr.,*
   473 U.S. 432 (1985)................................................................15, 16, 30

*Chunn v. State ex rel. Dep't of Ins.,*
   156 So. 3d 884 (Miss. 2015)........................................................17, 27

iii

*Craigmiles v. Giles,*
    312 F.3d 220 (6th Cir. 2002)................................................................16

*Crook v. El Paso Indep. Sch. Dist.,*
    277 F. App'x 477 (5th Cir. 2008) ......................................................21

*Cronin v. O'Leary,*
    2001 WL 919969 (Mass. Super. Ct. Aug. 9, 2001) .........................18

*Darks v. City of Cincinnati,*
    745 F.2d 1040 (6th Cir. 1984)............................................................20

*Davidson v. Randall,*
    912 F.3d 666 (4th Cir. 2019)................................................................8

*Davis v. Bucher,*
    451 F. Supp. 791 (E.D. Pa. 1978) ......................................................19

*Doe v. Va. Dep't of State Police,*
    713 F.3d 745 (4th Cir. 2013)............................................................5, 6

*Elder v. Holloway,*
    510 U.S. 510 (1994)...............................................................................4

*Episcopal Church v. Church Ins. Co. of Vt.,*
    997 F.3d 149 (4th Cir. 2021)..............................................................11

*Fields v. Dep't of Early Learning,*
    434 P.3d 999 (Wash. 2019) ..................................................17, 29, 31

*Furst v. N.Y.C. Transit Auth.,*
    631 F. Supp. 1131 (E.D.N.Y. 1986)...................................................17

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016)............................................................13

*Geo-Tech Reclamation Indus., Inc. v. Hamrick*,
    886 F.2d 662 (4th Cir. 1989)............................................................16

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008)............................................................16

*Goldfarb v. Mayor & City Council of Baltimore*,
    791 F.3d 500 (4th Cir. 2015)................................................2, 12, 14

*Graham v. Florida*,
    560 U.S. 48 (2010)............................................................................28

*Gregg v. Lawson*,
    732 F. Supp. 849 (E.D. Tenn. 1989)................................................17

*Hamilton v. Pallozzi*,
    848 F.3d 614 (4th Cir. 2017)....................................................*passim*

*In re Breland*,
    989 F.3d 919 (11th Cir. 2021)..........................................................11

*In re Matthews*,
    395 F.3d 477 (4th Cir. 2005)............................................................13

*Johnson v. Allegheny Intermediate Unit*,
    59 A.3d 10 (Pa. Commw. Ct. 2012) ................................................18

*Kindem v. City of Alameda*,
    502 F. Supp. 1108 (N.D. Cal. 1980)................................................17

*Lerner v. Casey*,
    357 U.S. 468 (1958)..................................................................... 20-21

*Lewis v. Ala. Dep't of Pub. Safety*,
    831 F. Supp. 824 (M.D. Ala. 1993) .................................................17

*Lovelace v. Lee*,
    472 F.3d 174 (4th Cir. 2006) ....................................................12, 13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................3

*Lux v. Judd*,
    651 F.3d 396 (4th Cir. 2011)...........................................................13

*Mann v. Commonwealth*,
    14 S.E.2d 283 (Va. 1941) .................................................................5

*Miller v. Alabama*,
    567 U.S. 460 (2012)........................................................................28

*Miller v. Carter*,
    547 F.2d 1314 (7th Cir. 1977)..............................................16, 32, 35

*NAACP v. Bureau of Census*,
    945 F.3d 183 (4th Cir. 2019)..........................................................13

*Nixon v. Commonwealth*,
    839 A.2d 277 (Pa. 2003) ...........................................................18, 33

*Osterman v. Paulk*,
    387 F. Supp. 669 (S.D. Fla. 1974)..................................................19

*Peake v. Commonwealth,*
132 A.3d 506 (Pa. Commw. Ct. 2015) ...........................................18

*Pentco, Inc. v. Moody,*
474 F. Supp. 1001 (S.D. Ohio 1978) ................................................17

*Perrine v. Mun. Ct.,*
5 Cal.3d 656 (1971) .....................................................................18

*Pizzuto v. Tewalt,*
997 F.3d 893 (9th Cir. 2021) ...........................................................5

*Prynne v. Settle,*
848 F. App'x 93 (4th Cir. 2021) ......................................................21

*Q Intern. Courier, Inc. v. Smoak,*
441 F.3d 214 (4th Cir. 2006) ..........................................................12

*Schware v. Bd. of Bar Exam'rs,*
353 U.S. 232 (1957) ..........................................................15, 26, 27

*Scoggins v. Lee's Crossing Homeowners Ass'n,*
718 F.3d 262 (4th Cir. 2013) ...............................................1, 8, 9, 10

*Sec'y of Revenue v. John's Vending Corp.,*
309 A.2d 358 (Pa. 1973) ...............................................................19

*Shimose v. Haw. Health Sys. Corp.,*
345 P.3d 145 (Haw. 2015) .............................................................19

*Smith v. Fussenich,*
440 F. Supp. 1077 (D. Conn. 1977) .........................................*passim*

*State ex rel. Cloud v. Election Bd. of Okla.*,
  36 P.2d 20 (Okla. 1934) ...................................................................21

*Stimmel v. Sessions*,
  879 F.3d 198 (6th Cir. 2018) ..............................................................6

*Warren Cnty. Hum. Servs. v. State Civ. Serv. Comm'n*,
  844 A.2d 70 (Pa. Commw. Ct. 2004) ...............................................18

*Weiss v. N.M. Bd. of Dentistry*,
  798 P.2d 175 (N.M. 1990) ...........................................................20, 21

*Whitaker v. Monroe Staffing Servs., LLC*,
  42 F.4th 200 (4th Cir. 2022) ...............................................................9

*Wright v. North Carolina*,
  787 F.3d 256 (4th Cir. 2015) .............................................................15

*Schanuel v. Anderson*,
  708 F.2d 316 (7th Cir. 1983) .............................................................20

*St. Joseph Abbey v. Castille*,
  712 F.3d 215 (5th Cir. 2013) .......................................................16, 22

*Talbot v. Lucy Corr Nursing Home*,
  118 F.3d 215 (4th Cir. 1997) .................................................... 4-5, 13

*Tanner v. De Sapio*,
  150 N.Y.S.2d 640 (N.Y. Sup. Ct. 1956) ...........................................18

*Thompson v. Gallagher*,
  489 F.2d 443 (5th Cir. 1973) .............................................................19

viii

*United States v. Anchor Mortg. Corp.*,
   711 F.3d 745 (7th Cir. 2013)...............................................................4

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ..........................................................*passim*

**STATUTES**

Va. Code Ann. § 9.1-139.....................................................................30

Va. Code Ann. § 18.2-46.2..................................................................27

Va. Code Ann. § 18.2-51.5..................................................................27

Va. Code Ann. § 18.2-57......................................................................33

Va. Code Ann. § 18.2-57.01.................................................................27

Va. Code Ann. § 18.2-88......................................................................27

Va. Code Ann. § 18.2-250....................................................................32

Va. Code Ann. § 18.2-374.1:1.............................................................27

Va. Code Ann. § 18.2-477.1.................................................................27

Va. Code Ann. § 19.2-392.02..........................................................8, 32

Va. Code Ann. § 37.2-403..............................................................23, 30

Va. Code Ann. § 37.2-416...........................................................*passim*

Va. Code Ann. § 54.1-204....................................................................29

Va. Code Ann. § 54.1-2930....................................................................29

**REGULATIONS**

18 VAC 35-10-30..................................................................................29

18 VAC 115-20-140..............................................................................30

18 VAC 115-50-120..............................................................................30

18 VAC 125-20-160..............................................................................30

**OTHER AUTHORITIES**

4 Charles Alan Wright et al.,
     *Federal Prac. & Proc.* § 3904 (2d ed. 2020) .......................................11

x

# INTRODUCTION

The Department does not dispute that Rudy cannot return to the career in which he excelled. Standing is that simple. Rudy has standing to challenge the barrier law today because the law bans him from working today. A controlling case confirms it. *See Hamilton v. Pallozzi*, 848 F.3d 614, 622 (4th Cir. 2017).

Even so, the Department makes arguments predicted—and refuted—in Rudy's opening brief. The Department gives little reason why the hope of a pardon requires the federal courts to ignore their independent duty to act. It has no defense for its argument's strange endpoint: that *other states'* officers are the "initial decisionmaker" for who may work certain jobs in Virginia. And its answer to the alternative, "constructive denial" basis for standing does not distinguish this Court's decision in *Scoggins*—or even mention the many other cases standing for the same principle. In short, Rudy's claims are justiciable. The Court should reverse.

Perhaps sensing its justiciability theories are wrong, the Department spends more of its brief arguing for affirmance under Rule 12(b)(6), which

the district court never reached. But that would improperly convert a dismissal without prejudice to one with prejudice. Even if not, "[t]he district court is in a better position to consider the parties' arguments in the first instance, which can be presented at length rather than being discussed in appellate briefs centered on the issues the district court did decide." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015). The better course is to reverse the obvious error on standing and remand.

But if the Court wishes to consider Rule 12(b)(6), Rudy has more than stated a claim. The Department essentially argues that rational-basis claims in this field can never reach discovery. But that ignores that plaintiffs *routinely* win challenges to criminal-history employment bans *on the merits*. And it ignores Rudy's well-pleaded allegations that show the barrier law suffers from the same flaws courts identify in invalidating similar laws. Rudy has thus stated plausible claims.

## JUSTICIABILITY

### I.    Rudy's claims are justiciable today because the Department bans him from working today.

**A.**    Rudy has standing to sue the Department because the Department has banned him from working since 2018. To recap, the Department told Rudy's employer in writing that the barrier law makes Rudy ineligible to work in direct-care positions. That one sentence establishes his standing. It is an injury. It is traceable to the Department. And it is redressable by the relief Rudy seeks: an injunction prohibiting the Department from acting on it. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (identifying the three elements of standing).

The Department disputes very little of this. Instead, it contends that Rudy isn't injured *yet*. Rudy, the Department argues, will not *really* be injured until he has exhausted every avenue of relief other than the federal courts. And because Virginia's Governor *could* one day pardon Rudy's barrier offense, Rudy's injury has not yet attached. Dep't Br. 16-17.

That is not how standing works. As this Court made clear in *Hamilton v. Pallozzi*, a plaintiff has standing to challenge a criminal-history ban once

the "initial decisionmaker" that enforces the ban confirms it bars the plaintiff. 848 F.3d 614, 622 (4th Cir. 2017). The "determin[ation]" that "a previous conviction is disqualifying" inflicts an injury. *Id*. That some other entity—like a pardon-granting official—might (or might not) someday remedy the injury does not change that it is an injury from the day it is inflicted. *Id*. at 621-22.[1]

Under this controlling case, Rudy's injury attached when the Department said he was banned from direct-care work. He has been injured every day since because he has been banned every day since. That the Governor might someday end Rudy's exile through his state-law pardon power does not foreclose Rudy's right to invoke federal civil-rights protections now. *Hamilton* is enough, but this principle is universal. Section 1983 does not wait on state-law remedies; it adds to them. *See Talbot v. Lucy*

---

[1] The Department notes that Rudy's motion-to-dismiss response did not cite *Hamilton*. If the Department is hinting at forfeiture, it is wrong. *See Elder v. Holloway*, 510 U.S. 510, 514-15 (1994); *Alston v. Town of Brookline*, 997 F.3d 23, 44 (1st Cir. 2021) (preservation of an issue "does not depend on what authorities the arguing party cites"); *United States v. Anchor Mortg. Corp.*, 711 F.3d 745, 749 (7th Cir. 2013) ("A legal point is not forfeited by omission of the best authority.").

*Corr Nursing Home*, 118 F.3d 215, 219 (4th Cir. 1997) (noting the Supreme Court's conclusion that the "federal remedy under § 1983 is supplementary to state remed[ies]"); *Pizzuto v. Tewalt*, 997 F.3d 893, 899-903 (9th Cir. 2021) (finding method-of-execution claims ripe even though post-conviction litigation could spare plaintiffs from execution).

**B.** The Department's responses are meritless. It argues that the Governor is an initial decisionmaker for whether Rudy may work as a counselor the same way "the 'initial decisionmakers' to determine whether the plaintiff could access school property were the Virginia circuit courts and the local school board" in *Doe*. Dep't Br. 16 (quoting *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 763 (4th Cir. 2013) (Keenan, J., concurring)). But the analogy does not work. The decisionmakers in *Doe* decided exactly that: *whether the plaintiff was allowed on school property*. 713 F.3d at 752-54. Pardons are far more generalized, and the reason for awarding one "rest[s] in the discretion of the person or persons having authority to grant them." *Mann v. Commonwealth*, 14 S.E.2d 283, 284 (Va. 1941). There are no standards *at all*, let alone about fitness to work as a counselor. A grant or denial may have more

5

to do with elected officials' political whims than with what justice requires. *Compare* Amicus Br. of CCRC 7 n.10 (detailing a Governor's decision to withhold a pardon in exchange for a swing legislator's vote on a labor bill), *with Doe*, 713 F.3d at 753-54 ("presum[ing]" Virginia courts treat similarly situated petitions for school access consistently).

The Department also argues (at 18) that *Hamilton* does not control because pardons are mentioned in the barrier statute but were not mentioned in the statute in *Hamilton*. That is a distinction without a difference. Just as with Rudy, a pardon in *Hamilton* would have relieved the injury. That possibility did not eliminate the injury in *Hamilton*, so it does not eliminate the injury here. Moreover, the Sixth Circuit has held ripe a challenge to a criminal-history ban despite an *explicit* exception for pardoned offenses. *Stimmel v. Sessions*, 879 F.3d 198, 207 & n.7 (6th Cir. 2018); *accord id*. at 213-14 (Boggs, J., dissenting).

The arguments the Department does not answer confirm that its position is untenable. For one, it does not justify the impossible-to-ignore result of its argument: that *other states'* pardon officials would become the

6

"initial decisionmaker" for who may work as a counselor in Virginia. *Compare* Opening Br. 32-33, *with* Dep't Br. 22. It just says that problem would "present separate questions." Dep't Br. 22. But it fails to explain why, or what those questions might be. The Department likewise fails to address that pardon denials are not forever. Since clemency can be sought repeatedly, the Department's theory should mean that the barrier law is *never* injurious enough for standing. *See* Amicus Br. of CCRC 19-20. Which is absurd.

The Department does not respond to these points because there is no response. The possibility of a pardon is irrelevant to standing. Rudy has standing today because the Department is banning him from working today. The district court's holding otherwise was error.

## II.    The amended complaint would establish Rudy's standing because the pardon process is a dead end.

The Department is also wrong that the proposed amended complaint would not have independently shown standing. As the opening brief makes clear—and as the Department does not dispute—the pardon process is not a

meaningful avenue for relief. The district court erred in refusing leave to amend the complaint to allege as much.[2]

Again, Rudy applied for a pardon in 2018. His application has languished for four years. There is no deadline by which it must be decided or even a requirement that it ever be decided. *Cf.* Va. Code Ann. § 19.2-392.02(C) (requiring "reasonable efforts" to complete a criminal background check—the basis for the Department's initial decision for direct-care eligibility—within 15 days). Under (undisputed) circumstances like this, both this Court and others assessing ripeness treat applications as "constructive[ly] deni[ed]." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 271-72 (4th Cir. 2013); *see* Opening Br. 40-41 (collecting cases).

The Department's two attempts to distinguish *Scoggins* fail. It first argues that Rudy "points to no facts suggesting that the Governor has *refused* to decide" Rudy's pardon application. Dep't Br. 21 (emphasis added). But

---

[2] The Department states that courts review denial of leave to amend a pleading for abuse of discretion. Dep't Br. 11. That is true when the basis for denial is prejudice or bad faith. But denial for futility—the district court's basis here—is reviewed de novo. *Davidson v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019); Opening Br. 36.

8

no such facts are necessary. It is the Governor's "failure to take any action for such an extended period," not his subjective motivation for that failure, that "operate[s] as a constructive denial." *Scoggins*, 718 F.3d at 272. Fifteen months of waiting constituted a constructive denial in *Scoggins* without the Court mentioning the decisionmaker's rationale for the delay. *Id*. Rudy's pardon petition has idled more than three times as long. (JA052.) *Cf. Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209 (4th Cir. 2022) (ripeness determined by the circumstances at the time of the court's decision, not the time of the complaint).

The Department also notes that the decisionmaker in *Scoggins* conceded at oral argument that it would have denied the application eventually. Dep't Br. 21. That doesn't move the needle either: in this Court's words, that concession was "not dispositive." 718 F.3d at 272 n.7. Regardless, other cases without concessions stand for the same principle. *See* Opening Br. 40-41.

\*            \*            \*

9

The Department urges this Court to "respect [] Virginia's processes" and provide "at [] least an opportunity" for the Governor to decide whether to pardon Rudy. Dep't Br. 15 (citation omitted). But the Governor's power to pardon is simply irrelevant to the Court's independent power—and obligation—to protect federal constitutional rights. Even on the Department's terms, two Governors *have* had nearly half a decade of "opportunity." Rudy has heard nothing but silence in return. All the while, he has been banned from work he desperately misses. And because nothing requires the Governor to *ever* decide a pardon application, he may well be banned forever. Under both *Hamilton* and *Scoggins*, the federal courts have jurisdiction to decide whether that ban is irrational.

## RULE 12(b)(6)

### I.     The district court should decide in the first instance whether Rudy's claims are plausible.

The Department's bid to short-circuit this litigation does not stop with justiciability. It also contends that even if the district court's justiciability analysis was wrong, the Department wins right out of the gate. It asks this Court to hold Rudy's claims meritless on the pleadings—that it is not even

*plausible* that a two-decade old crime might not relate to whether Rudy can help others struggling with addiction, just as he did when he won "counselor of the year." (JA011 (¶38).)

It is far from clear the Court *can* reach this argument absent a cross-appeal from the Department. The district court expressly declined to address Rule 12(b)(6) at all. (JA028.) In both its original dismissal and its denial of Rudy's request for reconsideration, it expressly passed only on justiciability. (JA026, JA065-066.) A dismissal for "lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice." *Episcopal Church v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154 n.4 (4th Cir. 2021) (citation omitted). By contrast, a dismissal under Rule 12(b)(6) is usually *with* prejudice. *See Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985). And an "appellee cannot, without cross-appeal … convert a dismissal without prejudice into a dismissal with prejudice." *In re Breland*, 989 F.3d 919, 922-23 (11th Cir. 2021) (quoting 4 Charles Alan Wright et al., Fed. Prac. & Proc. § 3904 (2d ed. 2020)); *see id*. § 3904 & n.12 (collecting cases

from four other circuits). The Department did not cross-appeal, so its 12(b)(6)

arguments are foreclosed.

Even if the Court has discretion to reach the 12(b)(6) analysis, it should

decline. The Court has repeatedly cautioned that it must be "mindful that [it

is] a court of review, not of first review." *Lovelace v. Lee*, 472 F.3d 174, 203 (4th

Cir. 2006) (citation omitted). For that reason, it has "deem[ed] it more

appropriate to allow the district court to consider" other issues in the first

instance. *Q Intern. Courier, Inc. v. Smoak*, 441 F.3d 214, 220 n.3 (4th Cir. 2006).

Because the district court passed only on justiciability,[3] Rudy's opening brief

addressed only that error. As to issues the district court left undecided, the

"district court is in a better position to consider the parties' arguments in the

first instance, which can be presented at length rather than being discussed

in appellate briefs centered on the issues the district court did decide."

*Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015).

---

[3] The district court's only statement about the merits was favorable to Rudy: "The Court sincerely hopes that … he is able to return to his good and important work … as a substance-abuse counselor." (JA031.)

Again and again, this Court has said that it is "reluctant to decide [an] issue in the first instance." *In re Matthews*, 395 F.3d 477, 484 (4th Cir. 2005). It has said that when a district court errs in one aspect of the motion-to-dismiss analysis, it should correct only the threshold error and "reserve substantive consideration of [a plaintiff's] claim for the district court in the first instance." *Lux v. Judd*, 651 F.3d 396, 404 (4th Cir. 2011). And it has said that, after vacating a district court's Rule 12(b)(1) dismissal when "the district court expressly declined to rule on [defendants'] motion to dismiss for failure to state a claim," it prefers to "express no opinion." *Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 220 & n.3 (4th Cir. 1997).[4]

---

[4] The list goes on. *See NAACP v. Bureau of Census*, 945 F.3d 183, 193 (4th Cir. 2019) ("we decline the defendants' request that we examine their alternative grounds for dismissal … in the first instance on appeal," including a failure-to-state-a-claim ground); *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 717 n.3 (4th Cir. 2016) ("We will not proceed to the merits of G.G.'s equal protection claim on appeal without the benefit of the district court's prior consideration."); *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) ("Lovelace's due process claim might ultimately fail, but for now we should be 'mindful that we are a court of review, not of first view.'").

Accordingly, after vacating the district court's ruling on justiciability, the Court should remand for the district court's consideration of the parties' 12(b)(6) arguments. Fairness requires that Rudy be given a chance to file an "appellate brief[]" truly "centered on the issues" undergirding any dismissal. *Goldfarb*, 791 F.3d at 515.

## II. Rudy has stated a plausible claim that the barrier law is irrational.

If the Court does reach the 12(b)(6) analysis, it should hold that Rudy has stated plausible claims. Plaintiffs routinely *win* similar challenges to occupational bans based on criminal history, so they must at least be able to survive the pleading standard (Section A, below). Rudy's detailed allegations of the barrier law's flaws (Section B) reveal the same irrationalities courts identify in invalidating similar laws (Section C). Finally, the Department's argument that Rudy is not similarly situated to other aspiring counselors is wrong (Section D). If the Court reaches this far, it should hold that Rudy has plausibly alleged that, as applied to him and other would-be substance-abuse counselors, the barrier law is irrational— and that he may proceed to discovery to prove as much.

## A. Motions to dismiss favor plaintiffs, who routinely win cases like this on the merits.

**1.** At this early stage, courts must "accept[] as true all of the factual allegations contained in the complaint and draw[] all reasonable inferences in favor of the plaintiff." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (cleaned up). The complaint need only allege sufficient facts to *plausibly* state a claim: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Rudy agrees the rational-basis test governs his claims, meaning the barrier law must "rationally relate[] to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). But as the Department acknowledges, the test is tighter for employment restrictions: the restriction must rationally connect not just with any state interest, but with the individual's fitness to practice the profession. *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957); Dep't Br. 29 (quoting circuit articulation of *Schware* standard).

Plaintiffs can "negate a seemingly plausible basis for [a] law" by alleging and "adducing evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013); *cf. Giarratano v. Johnson*, 521 F.3d 298, 304 & nn. 4-6 (4th Cir. 2008) (bare recitation that policy "is not rationally related to any legitimate government interest" not enough, while a better-pleaded complaint might "survive a motion to dismiss") (cited at Dep't Br. 30). The test is "deferential," but far from "toothless." *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002). Otherwise, plaintiffs could never win rational-basis cases. But they do. *E.g.*, *Cleburne*, 473 U.S. at 447-50; *Geo-Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 667 (4th Cir. 1989); *St. Joseph Abbey*, 712 F.3d at 223-27; *Craigmiles*, 312 F.3d at 229.

Indeed, they win rational-basis challenges in exactly this context. Courts routinely invalidate *on the merits* criminal-history-based employment bans—including in education, childcare, private security, and other potentially sensitive fields. That includes:

- Taxi driving, *Miller v. Carter*, 547 F.2d 1314 (7th Cir. 1977) (per curiam), *aff'd*, 434 U.S. 356 (1978) (armed robbery and other crimes);

- Childcare, *Fields v. Dep't of Early Learning*, 434 P.3d 999 (Wash. 2019) (attempted robbery);

- Bail-bonding, *Chunn v. State ex rel. Dep't of Ins.*, 156 So. 3d 884 (Miss. 2015) (felonies);

- Trading precious metals, *Barletta v. Rilling*, 973 F. Supp. 2d 132 (D. Conn. 2013) (felonies);

- Public wrecking, *Lewis v. Ala. Dep't of Pub. Safety*, 831 F. Supp. 824 (M.D. Ala. 1993) (crimes of moral turpitude); *Gregg v. Lawson*, 732 F. Supp. 849 (E.D. Tenn. 1989) (felonies) (denying motion to dismiss);

- Civil service, *Furst v. N.Y.C. Transit Auth.*, 631 F. Supp. 1131 (E.D.N.Y. 1986) (felonies); *Kindem v. City of Alameda*, 502 F. Supp. 1108 (N.D. Cal. 1980) (any felony); *Butts v. Nichols*, 381 F. Supp. 573 (S.D. Iowa 1974) (any felony);

- Massage, *Pentco, Inc. v. Moody*, 474 F. Supp. 1001 (S.D. Ohio 1978) (two felonies or any sex crime within past five years);

- Private detective or security guard work, *Smith v. Fussenich*, 440 F. Supp. 1077 (D. Conn. 1977) (felonies);

- Eldercare, *Nixon v. Commonwealth*, 839 A.2d 277 (Pa. 2003) (various crimes); *Peake v. Commonwealth*, 132 A.3d 506 (Pa. Commw. Ct. 2015) (en banc) (same);

- Working in a public school, *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10 (Pa. Commw. Ct. 2012) (en banc) (felony homicide);

- Child-protective services, *Warren Cnty. Hum. Servs. v. State Civ. Serv. Comm'n*, 844 A.2d 70 (Pa. Commw. Ct. 2004) (aggravated assault);

- Bookselling, *Perrine v. Mun. Ct.*, 5 Cal. 3d 656 (1971) (sexual and violent crimes);

- Selling cars, *Brewer v. Dep't of Motor Vehicles*, 93 Cal. App. 3d 358 (1979) (crimes of moral turpitude);

- Health and human services with unsupervised client contact, *Cronin v. O'Leary*, 2001 WL 919969 (Mass. Super. Ct. Aug. 9, 2001) (manslaughter and armed robbery);

- Cosmetology, *Tanner v. De Sapio*, 150 N.Y.S.2d 640 (N.Y. Sup. Ct. 1956) (grand larceny);

- Radiology, *Shimose v. Haw. Health Sys. Corp.*, 345 P.3d 145 (Haw. 2015) (drug possession with intent) (statutory ruling, denying summary judgment); and

- Cigarette wholesaling, *Sec'y of Revenue v. John's Vending Corp.*, 309 A.2d 358 (Pa. 1973) (crimes of moral turpitude) (statutory ruling).[5]

If plaintiffs like Rudy can *prove* irrationality in these cases and win final judgments, they must at least be able to survive motions to dismiss, which ask only whether their claims are plausible.

    **2.**      The Department cites a few cases that come out the other way. *See* Dep't Br. 31-33. But these cases show why the Court *should not* dismiss on the pleadings. Only a fact record will show whether this case is more like the twenty-plus cases in which plaintiffs won, or more like the cases offered

---

[5] Courts likewise invalidate bans based on disfavored non-criminal backgrounds. *E.g., Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1973) (public employment for non-honorably discharged veterans); *Davis v. Bucher*, 451 F. Supp. 791 (E.D. Pa. 1978) (public employment for former drug users); *Osterman v. Paulk*, 387 F. Supp. 669 (S.D. Fla. 1974) (public employment for recent marijuana users).

by the Department. For now, on a motion to dismiss, the Department's cases simply are not instructive.

Start with *Darks v. City of Cincinnati*, 745 F.2d 1040, 1043 (6th Cir. 1984). It was decided after summary judgment on a full record, not on a motion to dismiss, and the plaintiff there had *two* felony convictions. Rudy has one, from almost twenty years ago.

*Schanuel v. Anderson*, too, was decided on a summary-judgment record. 708 F.2d 316, 320 (7th Cir. 1983). And it dealt with a narrowly tailored ten-year ban, not lifetime exile. *See id.* (distinguishing a case that invalidated a lifetime ban); *id.* n.3 ("At the end of the 10 years, the ex-offender is presumptively rehabilitated.").

*Weiss v. New Mexico Board of Dentistry* did not concern a prospective employment ban for old, unrelated crimes. Rather, it asked whether the state could revoke a dentist's license after he committed Medicaid fraud *in the practice of dentistry*. 798 P.2d 175, 180 (N.M. 1990).

On and on. The person in *Lerner v. Casey* was "deemed untrustworthy and unreliable," not because of a crime, but for refusing to answer whether

he was a Communist. 357 U.S. 468, 474-76 (1958). And finally, the Department cites *State ex rel. Cloud v. Election Board of Oklahoma*, 36 P.2d 20, 23 (Okla. 1934), for the idea that a felony conviction indicates unfitness for "certain positions of trust and responsibility." But in the next sentence, the court explained that someone who has served his time "should be given opportunity to prove by years of exemplary living that he has worked out a reformation … and to demonstrate that he is worthy of trust." *Id*. Ultimately, the court held that the applicant's prior felony conviction *did not* ban him from office. *Id*.[6] None of the Department's cases justify tossing Rudy's claims on the pleadings. Rather, many cases show that they should be sustained.

---

[6] The Department (at 36) additionally cites *Prynne v. Settle*, 848 F. App'x 93, 104 n.8 (4th Cir. 2021), but the employment restriction there was based on *current* sex-offender status, not criminal history per se, and no employment restriction was squarely before the court. *Baer v. City of Wauwatosa*, like *Weiss*, concerned licensure revocation for misconduct *during* practice, not a prospective ban for old crimes. 716 F.2d 1117, 1123 (7th Cir. 1983). And the plaintiff in *Crook v. El Paso Independent School District*, 277 F. App'x 477, 481 (5th Cir. 2008) was barred from working with children after *thirteen* felony convictions. Even if these cases were on-point, the weight of authority would heavily favor Rudy.

**B. Rudy's allegations state a claim.**

Taken as true, the allegations overcome any justification for the barrier law. The Department claims its sweeping lifetime ban is justified because people with any of the nearly 200 barrier convictions—no matter how dated, no matter the circumstances—might "exploit" people recovering from addiction or lead them "further into addiction or criminality." Dep't Br. 32. Alternatively, it says people like Rudy could "jeopardize the citizenry's confidence in the quality" of mental-health services. *Id*. 33. Although the Department does not address them, Rudy's allegations repeatedly "negate" this speculation. *Cf. St. Joseph Abbey*, 712 F.3d at 223.

- The barrier law blocks people the Department itself (when not facing litigation) calls "qualified" and "invaluabl[y]" experienced. (JA017 (¶96).)[7]

---

[7] The Department repeatedly characterizes Rudy's allegation as being "that his criminal past makes him an effective counselor." Dep't Br. 2, 33. That is wrong. Rather, as the Department itself recognizes, it is his "first-hand experience" overcoming addiction that is "invaluable in the provision of services." (JA017 (¶96)) (Department's words in quotes).

- The barrier law *worsens* substance abuse in Virginia by limiting the supply of qualified counselors, despite robust demand. (JA014, JA017 (¶¶65, 68, 95).)

- Virginia has "certified" people with barrier convictions as qualified substance-abuse counselors, only to then ban them from working. (JA017 (¶79).)

- People with barrier convictions can serve—and have served—as excellent substance-abuse counselors. (JA011 (¶38).)

- People with barrier convictions may (and do) *volunteer* as substance-abuse counselors at licensed facilities. (JA016-017 (¶¶92-93).)

- For most mental-health counseling—on topics other than substance abuse, or counseling for substance abuse *outside of* licensed treatment facilities—there is no barrier law. (JA015 (¶75).) *See also* Va. Code Ann. §§ 37.2-403, 37.2-416(B) (exempting individual practitioners).

- Most people with barrier convictions who are otherwise qualified for substance-abuse counseling have been rehabilitated and pose no unique risk to the public. (JA016 (¶84).)[8]

- The risk of recidivism becomes minimal after only a few years, which the Department acknowledges outside of litigation. (JA016-017 (¶¶86, 97).)

- Substance-abuse counseling does not provide unique opportunities to commit crimes, including assault and battery. (JA014 (¶¶71-72).)

- Most barrier crimes have nothing to do with substance-abuse counseling. (JA014 (¶70).)

- The barrier crimes most facially related to substance-abuse counseling are eligible for individualized screening, while people with unrelated convictions like Rudy are banned. (JA015 (¶81).)

---

[8] The Department says its interest is in preventing people with barrier convictions from working "without restriction." Dep't Br. 32. Of course, there is daylight between the current lifetime ban and "without restriction." Virginia could set time limits or a screening process (or both), as it already does for some barrier crimes. (JA015 (¶80).)

- The barrier law does not protect the public from bad substance-abuse counselors, and there is no evidence that it does. (JA014 (¶¶66-67).)

The same is true as applied to Rudy.

- Allowing him to work would benefit the public, not pose any risk. (JA017-018 (¶¶103-04).)

- He turned his life around nearly two decades ago and has not been convicted since 2004. (JA010 (¶¶22-29).)

- He has been trusted to help the homeless, volunteer with at-risk youth, and speak at drug courts. (JA010 (¶¶30-32).)

- He studied counseling in school for years, then excelled as a substance-abuse counselor for five years—even winning his employer's counselor of the year award. (JA011 (¶¶34, 38).)

- His former boss at a treatment facility would "hire him again in a heartbeat." (JA019 (¶116).)

These detailed allegations state a claim that the barrier law is irrational as applied to substance-abuse counselors, and especially as applied to Rudy.

The district court should have a chance to consider them and let Rudy prove them.

### C. The barrier law suffers the same deficiencies courts cite in invalidating similar bans.

Indeed, Rudy's allegations reveal the same flaws that courts have identified in invalidating similar employment bans. The barrier law is (1) sweepingly overbroad, (2) rigid in application, (3) uniquely harsh, and (4) marked by inexplicable exemptions.

**1.** The barrier law bans people from substance-abuse counseling for crimes that have no bearing on one's fitness for substance-abuse counseling. *Cf. Schware*, 353 U.S. at 239 (qualifications must "rational[ly] connect[] with the applicant's fitness or capacity to practice"). The 176 barrier crimes are a hodgepodge of offenses including escaping from a *juvenile* detention facility, negligently damaging property by fire, committing *any crime* to benefit a gang, shining a laser pointer at a police officer, recklessly driving a boat under the influence, and a teenager's possessing a nude photo *of herself*. *See* Va. Code Ann. § 37.2-416(B)(1)

(indirectly citing §§ 18.2-477.1, 18.2-88, 18.2-46.2, 18.2-57.01, 18.2-51.5, 18.2-374.1:1).

Simply, among the barrier law's "critical defect[s] … is its overbreadth." *Fussenich*, 440 F. Supp. at 1080. Most of the barrier crimes "do not implicate the purposes identified by the State as justifying the ban" on substance-abuse counseling. *Barletta*, 973 F. Supp. 2d at 138. And, all else equal, nothing about a 20-year-old assault particularly suggests an inability to practice the profession. *Schware*, 353 U.S. at 239.

Rudy agrees states may exclude given a rational nexus to the occupation, but this case is not about child abusers in teaching positions or drug dealers in pharmacies. Overwhelmingly, the barrier crimes "bear no relationship," *Chunn*, 156 So.3d at 886, to "substance-abuse counseling," (JA014 (¶70).).

**2.** The barrier law is also irrational because it usually "prohibits consideration of the nature and severity of the crime, the nature and circumstances of an applicant's involvement in the crime, the time elapsed since conviction, and the degree of the applicant's rehabilitation." *Barletta*,

973 F. Supp. 2d at 139. But circumstances matter. While no crime is fully excusable, society has "long held" that acts partially attributable "to a disadvantaged background, or to emotional and mental problems, may be less culpable." *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Particularly relevant here, barrier crimes often result from addiction or mental-health struggles. (JA016 (¶90).) The Department itself recognizes that someone who overcomes addiction "can be invaluable" in counseling others to do the same. (JA 017 (¶96).)

Indeed, "rehabilitation" is the "ideal" of the criminal justice system. *Graham v. Florida*, 560 U.S. 48, 74 (2010). It's "common sense" that younger people "have diminished culpability and greater prospects for reform." *Miller v. Alabama*, 567 U.S. 460, 471 (2012). The system often achieves that goal; the Department itself recognizes that people can change. JA016-017 (¶¶84-86, 97)) ("recidivism rates decline by year after arrest") (Department's words), *contra* Dep't Br. 32 (contending that a single old conviction shows *present* "criminal propensities"). But the barrier law ignores that too. It forces the Department to "disqualify[]" people even for "conviction[s] [that]

occurred long ago under circumstances that no longer exist." *Fields*, 434 P.3d at 1005. Courts reject "across-the-board disqualification[s]" that ignore "probable and realistic circumstances," "including the likelihood of rehabilitation, age at the time of conviction, and other mitigating circumstances." *Fussenich*, 440 F. Supp. at 1080.

**3.**     The barrier law is also irrationally harsh judged against the law for other occupations. In Virginia, a past conviction generally bans someone from working only if it "directly relates" to the job—based on a nine-factor individualized test. Va. Code Ann. § 54.1-204(A)-(B).

The Department says that substance-abuse counseling is "a position of trust and influence." Dep't Br. 32. That is an issue for discovery, not the pleadings. But even if it is true, consider lawyers and doctors, who every day are trusted to influence people at their most vulnerable periods. (Each may regularly work with clients battling addiction, too.) No barrier law exists for these most sensitive professions; individualized consideration carries the day. 18 VAC 35-10-30 (lawyers); Va. Code Ann. § 54.1-2930 (doctors).

The Department also says that letting Rudy work as a substance-abuse counselor might "jeopardize the citizenry's confidence" in the "quality" of mental-health services. Dep't Br. 33. But "mere negative attitudes, or fear," or "unsubstantiated … objections of some fraction of the body politic" cannot sustain a classification. *Cleburne*, 473 U.S. at 448. Anyway, the barrier law utterly fails the task. Rudy can legally work as a security guard at a mental-health facility, even with his assault conviction. Va. Code Ann. §§ 9.1-139(K), 37.2-416(A). He can legally volunteer as a substance-abuse counselor at a facility. *Id*. § 37.2-416(B). Indeed, there is no barrier law for most other paid mental-health counseling in Virginia. 18 VAC 115-20-140(A)(1) (professional counselors); 18 VAC 125-20-160(1), (8) (psychologists); 18 VAC 115-50-120(A)(1) (marriage and family therapists). If Rudy could spend years more in school, he could legally provide substance-abuse counseling in one of these independently licensed roles. Va. Code Ann. §§ 37.2-403, 37.2-416(B). He can even counsel people under the employ of an independent professional. *Id*. But the barrier law bans him from doing the same thing at a treatment facility.

The Department's brief ignores these inexplicable distinctions. Courts, however, regularly cite distinctions like them in invalidating employment bans on the merits. *Fussenich*, 440 F. Supp. at 1080 (felony ban for private detectives and security guards, but "no automatic exclusion[]" from "law or medicine"); *Fields*, 434 P.3d at 1005 (lifetime ban from childcare for robbery conviction, but only a five-year ban from fostering children); *Butts*, 381 F. Supp. at 581 (felony ban for civil-service positions but not for high-level positions like treasurer and city manager). They are at least plausibly irrational here.

**4.**    The barrier law's exceptions also underscore its arbitrariness. As the Department notes (at 4-5), some barrier crimes do not work a lifetime ban. Some are eligible for an individualized screening five years after the person is released from custody. Others are not a barrier at all five years after conviction.

One might suppose the barrier crimes *most* arguably related to substance-abuse counseling work a lifetime ban, while those least connected to the Department's stated rationales are screenable or time-limited. But the

opposite is true. The Department says it is concerned that people with barrier convictions could "exploit" or lead people "further into addiction." That is hard to square with the barrier law not even considering felony drug possession after five years and making many drug distribution offenses individually screenable. Va. Code Ann. § 37.2-416(B)(1) (indirectly citing § 18.2-250); *id*. § 37.2-416(C) (citing § 19.2-392.02(A)(iii)).

More crucially, the barrier law does not require employers to terminate *existing* substance-abuse counselors who commit a barrier crime. It instead bans only "hir[ing] for compensated employment" someone with a barrier conviction. Va. Code Ann. § 37.2-416(B)(1); *see also id*. § 37.2-416(A) (exempting "person[s] employed prior to July 1, 1999" from the background check requirement when they accept *new* direct-care work).

The Department doesn't address this inconsistency. But the Seventh Circuit did in an on-point case. It invalidated Chicago's ordinance that banned people convicted of robbery years ago from obtaining a taxi license while allowing existing licensees convicted of robbery "only yesterday" to retain theirs. *Miller*, 547 F.2d at 1316. "[N]o justification exists for

32

automatically disqualifying one and not the other." *Id.*; *see also Nixon*, 839 A.2d at 289-90 (ban on working with "the elderly, disabled, and infirm" irrational as-applied because of grandfathering clause).

At base, the barrier law operates such that if Rudy had worked in a direct-care position in 2004 and assaulted a *patient*, it wouldn't permanently ban him from substance-abuse counseling. Even if his private employer fired him in that scenario, he would be eligible for individualized screening today. Va. Code Ann. § 37.2-416(C) (citing § 18.2-57).[9] Yet for a 2004 crime unrelated to substance-abuse counseling, he is banned for life. The Constitution may not require perfect line drawing, but at the pleading stage, a law this porous is at least plausibly irrational.

### D. The similarly situated prong is satisfied.

The Department also argues Rudy's equal protection claim fails the threshold step—that he is not similarly situated to non-barred aspiring

---

[9] *Cf.* § 37.2-416(F) (exempting most assaults from barrier law after ten years without the need for screening—but not assaults "while employed in a direct care position").

counselors. Even if the Department is right, Rudy has a functionally identical

due process claim that the barrier law is irrational.

But the Department is not right. Throughout (at 12, 24, 26, 30, 32), it

contends the classification made by the barrier law is between "violent

felons" and not. And, it says, Rudy is "not similarly situated to aspiring

counselors who are not convicted felons" because people with criminal

convictions can never be similarly situated to people without them. *Id*. 26-

28.

The Department is wrong for three separate reasons. First, it misstates

the classification. Many barrier crimes—like negligently damaging property

by fire, or misusing a laser, *see* p. 26, above—are neither violent nor a felony.

And second, at a minimum, Rudy is similarly situated to other people with

barrier convictions who are legally allowed to work in similar fields. He is

similarly situated to people with barrier convictions who were

grandfathered into direct-care work, and to those who commit barrier crimes

while already employed. *See* p. 32, above. And, he is similarly situated to

people with barrier convictions who are legally allowed to provide

counseling on addiction (or similar topics) outside a licensed facility. *See* p. 30, above. Those comparators alone state plausible equal protection claims. *E.g.*, *Miller*, 547 F.2d at 1316; *Fussenich*, 440 F. Supp. at 1080.

But Rudy is also similarly situated to aspiring substance-abuse counselors without barrier convictions. He has identical training, education, and qualifications for counseling as they do. (JA011.) Absent the barrier law, he would be hired just like other aspiring substance-abuse counselors. (JA018-019.)

In arguing that he is similarly situated only to other aspiring counselors *with barrier convictions*, the Department conflates the two steps of equal protection analysis. "Criminal convictions" is the very classification the statute makes. It cannot be that the same classification a statute makes prohibits a plaintiff from challenging that classification. Rather, the question is whether there is a good reason to make the classification. As just one example, Mildred and Richard Loving were surely "treated the same as every other applicant"—Dep't Br. 28—for an interracial marriage. *See* 388 U.S. 1 (1967). If similar treatment to others *facing the same statutory*

*classification* was enough for the government to win, plaintiffs could never win equal protection cases. But they do (*e.g., id*.)—and they win cases exactly like this one. The Department cannot be right unless all those cases (*see* pp. 16-19) are wrong.[10]

## CONCLUSION

Rudy has standing to challenge the barrier law today because the barrier law bars him from working today. This Court should reverse the district court's order to the contrary and remand.

If the Court considers 12(b)(6) arguments, it should hold that Rudy's complaint states a claim. The Department admits the barrier law keeps out qualified applicants. Rudy is one of them. Nearly two decades after the fact, an unrelated crime bans him from a field in which he already excelled. That is at least *plausibly* irrational.

Dated: January 23, 2023.

Respectfully submitted,
/s/ Michael Greenberg

---

[10] Rudy agrees his Privileges or Immunities claim is foreclosed. He preserves it for further review. (JA022.)

Andrew Ward (NY Bar No. 5364393)
Michael Greenberg (DC Bar No. 1723725)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: ahward@ij.org
        mgreenberg@ij.org

*Counsel for Plaintiff–Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 6,489 words. This brief complies with the type-style requirements because it was prepared using Microsoft Word 2022 in 14-point Palatino Linotype, a proportionally spaced typeface.

Dated: January 23, 2023.

/s/ Michael Greenberg
Michael Greenberg
*Counsel for Plaintiff–Appellant*